## Harris *vs.* Hanson *&* *als.*

The taking of the property of one, by a coroner, on a writ against another, is a *malfeasance* in office, constituting a breach of his bond given for "the faithful performance of the duties of his office."

This was an action of debt on the bond given by *Hanson* and the other defendants as his sureties, to the plaintiff, as Treasurer of the State, for the faithful performance of the duties of Coroner. It was submitted for the decision of the Court upon a case stated — the material facts being as follows:

One *Peter Frost*, who was a *deputy sheriff*, sued out his writ against one *John Maddox*, and committed the same to *Hanson*, the defendant, for service. On which, by direction of the cred-

itor, *Hanson* attached a wagon as the property of *Maddox* — but one *Sumner Knight,* claiming to own the wagon, took the same from *Hanson,* on a writ of replevin. In the replevin suit, the right of property was contested, but was settled by the verdict of the jury to be in *Knight,* the plaintiff in replevin, who recovered judgment against *Hanson* for the sum of fifty cents damage, and $172,30 costs of suit. Upon the execution which issued thereon, *Hanson* was committed to jail, from which he was duly discharged by taking the poor debtor's oath. Whereupon *Knight* brought this action in the name of the State Treasurer, on the Coroner's bond.

The defendants were to be defaulted, or the plaintiff nonsuited, according as the opinion of the Court should be upon the points raised.

*J. Shepley,* for the plaintiff, maintained that the act of the Coroner, complained of in this case, was clearly within the condition of his bond, and cited the following authorities in support of his general reasoning upon the subject. *Skinner* v. *Phillips & als.* 4 *Mass.* 68; *Knowlton* v. *Bartlett,* 1 *Pick.* 274; *Marshall* v. *Hosmer,* 4 *Mass.* 63; *Bond* v. *Ward,* 7 *Mass.* 123; *Grennell* v. *Phillips,* 1 *Mass.* 530; *Train* v. *Gold,* 5 *Pick.* 380; *March* v. *Gold & al.* 2 *Pick.* 285. He also cited the following statutes: *ch.* 93, *sec.* 1; *ch.* 91, *sec.* 5; *ch.* 92, *sec.* 1.

*D. Goodenow,* for the defendants.

The act of the defendant complained of, does not fall within the scope and intention of the statute, *ch.* 91, *sec.* 5, prescribing the condition of the bond — which condition is to be merely " for the faithful performance of the duties of said office." Nor is it within the terms of the bond. It is not stipulated that he shall perform his duty *well* — but *faithfully;* that is, *honestly.* There is no stipulation to be answerable for his *neglects* or *misdoings,* as in the case of a sheriff's bond, who stipulates to be answerable for the neglects or misdoings of his deputies.

In the case of a bond *given by* a clerk in a bank, containing similar provisions, it was held to apply to his *honesty* and not to his *ability;* and that consequently his sureties were not responsible for a loss arising to the bank from a *mistake* of the clerk, but

only for a *breach of trust.* *Union Bank* v. *Clossy,* 10 *Johns.* 271.

So of the Clerk of the Courts, *Crocker* v. *Fales & al.* 13 *Mass.* 260.

In this case, there was no *negligence* on the part of the officer — no want of *faithfulness* — no *misdoing,* — there was really no fault in him. He took the writ and served it, as he was by law bound to do. His name was used as the law required — he was a mere *nominal* party. *Frost* defended the action, and conducted the whole business. If the defendant had refused to receive and serve the writ, on being tendered with sufficient indemnity, that, it is admitted, would be a case within the bond. He would then be refusing to do what the statute required him to do. Why then should his doing what the law required him to do, be deemed an act of official misconduct, and a breach of his bond?

But it is contended further, that prior to a suit on the bond, there should have been an action against *Hanson,* to ascertain the damages. *Stat.* of 1820, *ch.* 91, *sec.* 6. *Knight's* suit against the defendant, was not against him as an officer for *malfeasance* or *nonfeasance,* but against him as an *individual.* The ascertaining the damages by suit, is a condition precedent to an action on the bond. Without the provision in the 6th section, no action could be maintained for the benefit of an individual in the name of the Treasurer. *Commonwealth* v. *Hatch,* 5 *Mass.* 191. But under this section, this action cannot be maintained, because the condition has not been complied with.

PARRIS J. delivered the opinion of the Court.

By statute *chap.* 91, *sec.* 5, it is provided, that all Coroners, who shall be appointed in any county in this State, before proceeding to discharge the duties of their office, shall give unto the Treasurer of the State a bond with sufficient sureties, for the faithful performance of the duties of their said office.

The condition of the bond, in this case, is, that the said *Hanson* shall well and faithfully do and perform all the duties which he is, by law, bound to do and perform by virtue of his holding said office. Although the condition is not in the precise phraseology of the statute, its legal effect and operation is the same. It

binds the principal to the faithful performance of the duties of the office of Coroner, and nothing more.

We have no hesitation in pronouncing it a valid bond, answering the requisitions of the statute under which it was taken. *Allegany County v. Van Campen*, 3 *Wend.* 48.

From the facts agreed it appears that the principal defendant, *Hanson*, as a Coroner, took the property of *Knight* on a writ against *Maddox*; — that *Knight* reclaimed it by a writ of replevin, which he prosecuted successfully to final judgment, and which the defendant resisted, claiming to hold the property by virtue of his original attachment on the writ against *Maddox.*

The decision in that case, being in favor of *Knight*, it was thereby settled that the defendant was not justified in interrupting *Knight's* possession. Is this such unfaithfulness in the performance of the duties of his office as amounts to a breach of the condition of his official bond ? Is an officer performing his duty faithfully by attaching the property of B. on a precept which commands him to attach the property of A.? By so doing, he may be answerable as a trespasser ; — and will the law hold acts constituting a trespass, a faithful performance of duty ? There may be cases where the officer might be unable to decide between the different claimants to property. Under such circumstances, it is his duty to remain passive until he is indemnified by the creditor, who urges him to action. This indemnity secures him, secures his sureties, and with it he may indemnify the injured party, provided it should appear that the property did not belong to him on whose account it was attached. But if an officer will heedlessly rush into danger, if he will unnecessarily assume responsibility by acting in doubtful cases, without indemnity, who must suffer, in case he should be unable to meet the damages ? Shall it be he from whom the officer has taken property without authority, and who has been in no way privy to his appointment or answerable for his faithful performance of duty, or shall it be those who voluntarily assumed the suretyship ?

A Coroner is an officer of high authority, clothed with all the power of Sheriff, in case of vacancy in that office, and sometimes, at least, as is shewn by the case at bar, unable to remunerate for an injury of trifling magnitude.

There are no adjudged cases of Coroner's bonds to be found in the books to which our attention has been called, but there are cases somewhat analogous.

The condition of the Coroner's bond, as prescribed by statute, is similar to that prescribed for sheriffs. The statute, *ch.* 91, *sec.* 1, provides that " every person appointed to the office of sheriff within this State, shall make and execute a bond to the Treasurer of the State, conditioned *for the faithful performance of the duties of their respective offices.*" This is an exact transcript of the statute of *Massachusetts, chap.* 44, *sec.* 1, upon the same subject, which requires, that every sheriff shall give sufficient security unto the Treasurer of the Commonwealth for his *faithful performance of the duties of his office;* — and by statute of *Massachusetts, ch.* 43, *sec.* 1, Coroners were also required to give security in the same manner as sheriffs by law are obliged to do. Thus, in both States the official bonds of Sheriffs and Coroners are similar.

The phraseology, "*faithful performance of the duties of his office,*" in the Sheriff's bond, received a judicial construction in *Massachusetts*, previous to our separation, and we are to consider that construction as adopted by the legislature of this State, when making use of the same language.

In *Skinner, Treasurer v. Phillips & al.* 4 *Mass.* 73, *Parsons C. J.* says, " From the manifest import of this condition it is extremely clear, that the condition of the bond is broken by the *malfeasance* of the Sheriff in his office. And if the condition be thus broken, the penalty at law is forfeited." Malfeasance in office is then a breach of the condition for faithful performance.

And is it not malfeasance in an officer, to attach the property of B on a process commanding him to attach the property of A? By the statute of *Massachusetts, ch.* 44, *sec.* 1, the Sheriff is required to give bond to answer for the *malfeasance* of his deputies. In *Knowlton v. Bartlett,* 1 *Pick.* 274, the Court say, " If the act from which the injury resulted was an official act, the authorities are clear that the Sheriff is answerable. But an official act does not mean what a deputy might lawfully do in the execution of his office; if so, no action could ever lie against a Sheriff for

the misconduct of his deputy. It means, therefore, whatever is done under color or by virtue of his office."

It is *malfeasance,* if the officer under color of his office does what the law prohibits. *Bond* v. *Ward,* 7 *Mass.* 130. In *Grennell* v. *Phillips,* 1 *Mass.* 530, the Court held, that the taking the goods of a stranger to satisfy an execution, was such *malfeasance* in a deputy as rendered the Sheriff liable in an action of trespass, and such has been considered the settled law. *Campbell* v. *Phelps,* 1 *Pick.* 66.

If taking the goods of a stranger is such *malfeasance* in a deputy as renders him liable to the Sheriff, as it must be if the Sheriff is answerable for the act, can it be that the same act by the Sheriff would not amount to *malfeasance* in himself; — and if the Sheriff is answerable on his official bond to the person injured by such an act of the deputy, is he not in the same manner answerable for the like act done by himself?

We have pursued this mode in examining the case, because it was contended for the defendant, that his liabilities were the same as those of Sheriff. If it be so, we think it is manifest that the Sheriff is liable to all persons injured by his official acts, that is, by acts done under color of his office ; — and that one of the objects of his bond is to afford security against such injuries.

But it is said that the action of replevin was not against the defendant as an officer, for malfeasance, but against him in his private capacity. The answer is, the defendant has elected to justify as an officer. He claimed protection under his official character, by alleging that the act done was under color of his office, and *that* was not controverted by the plaintiff in replevin. The question in issue was virtually whether, as an officer, he had a right to do the act. That question was decided against him, and the law resulting from that decision, pronounces the act done, *malfeasance* in office ; — as completely so, as if, instead of replevin, the original action had been trespass, and he had been charged by the verdict with the full-value of the property taken. The sureties on the bond are not injured by this. Their liability is diminished, as by replevin, the original plaintiff regained possession of his property, and the sureties, consequently, escape

from damages for its value, to which they might have been liable if the action had been trespass.

We do not decide that the sureties are precluded from shewing, if they can, that the taking was not under color of office. If there was collusion between the plaintiff in interest and the defendant to render the sureties answerable for an act done by the defendant, not as Coroner, but in his private capacity, we should hesitate before we should deprive the sureties of an opportunity to show it. *Hayes* v. *Seaver*, 7 *Greenl.* 237; *Foxcroft* v. *Nevers*, 4 *Greenl.* 72. But there is no such pretence in this case. The agreed statement expressly finds that the defendant, *Hanson*, as Coroner, in his said capacity, took the wagon as the property of *Maddox*, and duly made return thereof, it being at the same time the property of *Knight.*