Van Pelt v. Littler.

### VAN PELT v. LITTLER et als.

A STATEMENT on appeal, certified by the Judge to be correct, according to his recollection, is not sufficient.

An action on the official bond of a Constable lies primarily upon breach of the condition of the bond, whether the injury for which suit is brought be a trespass or not, the result of the nonfeasance or misfeasance of the officer.

Where a Sheriff or Constable seizes the property of one man under an execution against another, he is a trespasser, and liable on his official bond.

In an action of damages against a Constable for illegal seizure of plaintiff's property, the judgment was for six hundred and fifty dollars, the sum claimed in the complaint, the value of the property being fixed therein at four hundred and fifty dollars, and the damages at two hundred dollars. The Court found the damages at six hundred and fifty dollars. There was no statement on new trial or appeal. *Held*, that the finding of the Court is conclusive, and that the judgment must stand.

COPE, J. *held*, that the cause should be remanded to ascertain the value of the property, and that this, with legal interest, should be the judgment.

APPEAL from the Fifth District.

The case was tried by the Court, and, there being no statement on appeal, the facts can only be gathered from the findings which, upon the points decided, were, that "this action, being tried - - - - before the Court, without a jury, by consent, - - - - upon the evidence, pleadings, and admissions, of the defendants in open Court, the Court finds," etc. "that the judgment and execution upon which the Constable sold plaintiff's property were void;" that, "by reason of the levy and sale, - - - - plaintiff sustained damage in the sum of six hundred and fifty dollars."

*J. P. Vaughn*, for Appellant.

The complaint does not show a sufficient cause of action, for the reason that, in trespass, the officer should not, in an action against him therefor, be joined with his bondsman.

The action should first be brought against the officer, and, if he be unable to satisfy the judgment that may be recovered against him, then an action will lie on the official bond.

It is an old principle of law that on the reception of a ministerial writ, it is the duty of the officer, if it be regular on its face, to obey its authority. He is not bound to inquire whether there is a judgment to support the execution, or whether the

execution corresponds exactly with the judgment; if it be regular on its face, it is his duty to execute it; if there be any irregularity, that affects the parties, not the ministerial officers. (12 Wend. 96.)

Now, in this case, for aught the defendant, Littler, and his bondsman knew, the judgment and execution under which he acted may have been void; but, in an action for trespass against him, for proceeding under a void writ, though formal and regular upon its face, he may show that the property taken on execution was the property of the execution debtor, and thereby exculpate himself; that if there were a transfer of the property from Foster to plaintiff, it was void, and made with the view of defrauding the creditors of the execution debtor.

Exemplary damages not allowed, no wantonness or oppression on the part of the Constable being proven. (*Phelps* v. *Owens et al.* 11 Cal. 22; *Brannan* v. *Johnson,* 19 Me. 361, and *Pacific Insurance Co.* v. *Conrad,* Bald. 1, U. S. C. C.)

*Robinson, Beatty & Heacock,* for Respondent.

The sureties of Sheriffs and Constables are liable for the trespasses of an officer, committed on the goods of A, under color of process against B. (*People* v. *Schuyler,* 4 Coms. 173; *Archer* v. *Noble,* 3 Green. 418; *Com.* v. *Stockton,* 5 Mon. 192.)

It being conceded the sureties are liable, it has been decided in Kentucky (see *Com. for Davy* v. *Stockton,* 5 Mon. 192) that the officer and sureties may all be sued in the first action; that the trespass, (under color of process) and not the refusal to pay a judgment recovered, is the breach of the bond.

But the real point in this case is, could the officer justify under his process? The rule is that an officer may justify under an execution, regular on its face, against the defendant therein. But when, under an execution against A, the officer seizes property in the possession of B, alleging that the title of B is fraudulent as to the creditors of A, then the officer must produce, not only an execution, but a valid judgment against A. (*Thornburg* v. *Hand,* 7 Cal. 554; *Janson* v. *Ackler,* 23 Wend. 480; 2 .Cowen & Hill's Notes, 789, 793, and authorities there cited.)

COPE, J. delivered the following opinion :

The statement in the record, purporting to be a statement on motion for a new trial, is not sufficiently authenticated. The Judge certifies that the statement is correct according to his recollection. This is not even a substantial compliance with the statute. The certificate should show with reasonable certainty that the statement is correct. The case must therefore be reviewed on the judgment roll and the findings of the Court. The suit is brought upon the official bond of a Constable, against the officer and his sureties, to recover damages for an illegal seizure of the property of the plaintiff, under an execution against other parties. It appears from the complaint that the execution was issued on the 1st of April, 1856, and that the property was taken on that day, or soon after. The value of the property is stated in the complaint at four hundred and fifty dollars, and the plaintiff claims two hundred dollars additional damages. The judgment is for the whole amount claimed.

It is contended that this suit is improperly brought upon the official bond of the Constable; that the sureties are not liable on the bond on the first instance, and that the only remedy primarily is an action of trespass against the officer alone. The condition of the bond is, that the officer shall well and faithfully discharge the duties of his office, and if it is admitted that the facts of this case establish a breach of the condition, we think there can be nothing in the point, that the primary remedy is against the officer as a trespasser, and not on the bond. The proposition amounts to this: that every person injured by the official misconduct of an officer, may have an action on his bond for the damages occasioned by such injury, but if the act causing the injury be a trespass, this remedy is merely secondary, and cannot be pursued until the individual remedies against the officer have been exhausted. We can perceive no sufficient reason for the distinction. The bond is a contract by which the officer and his sureties, in effect, covenant and agree, not only that the officer will faithfully perform the duties enjoined by law, but that he will not by virtue, or under color, of his office, commit any illegal or improper act. The obligation imposed by the contract, and the liability resulting from a violation of its terms, are in all cases primary and absolute, and the remedy is the same whether the cause of action result from the nonfea-

sance or the misfeasance of the officer. It is no answer to an action upon the official bond of an officer, that the party complaining has not chosen to pursue some other equally available and proper remedy.

But the real question in this case is, whether the Constable is liable at all upon his official bond. In seizing the property of the plaintiff, he undoubtedly committed a trespass, and it was said in *Ex parte Reed*, (4 Hill, 572,) that "the charge of a trespass assumes that the Act could not have been done *virtute officii*. It is no more the act of the Sheriff, because done *colore officii*, than if he had been destitute of process. To allow a prosecution would be equivalent to saying that the sureties of a Sheriff are bound by his general good behavior as a citizen." The condition of the bond in that case was, that the officer should well and faithfully perform and execute the office of Sheriff, during his continuance in said office, without fraud, deceit, or oppression, and it was held that these words could not be extended beyond nonfeasance or misfeasance in respect to acts which by law he was required to perform as Sheriff. The decision, which was adverse to the maintenance of the action, was placed expressly upon the ground, that the act of the officer in taking the property of one person under an execution against another, was a naked trespass, for which no suit could be brought on his official bond. But the authority of that case was overthrown by the decision in the case of *The People ex rel. Kellog* v. *Schuyler et al.* (4 Com. 173,) where it was held, upon a careful review of the authorities, that it was *official* misconduct in a Sheriff to seize, by virtue of process in his hands, the property of a stranger to the writ, and that for such misconduct he and his sureties were liable upon his official bond. Gardiner, J. in delivering the opinion of the Court, used the following pertinent and forcible language: "Before and at the time of the alleged trespass, Schuyler was Sheriff of the county of Rensselaer. As a public officer, the attachment in question was necessarily and lawfully delivered to, and received by, him. He assumes to levy and draw up his inventory as Sheriff; as Sheriff he rightfully summoned a jury to determine the title to the property seized, and, subsequently, in his official character, received an indemnity, and detained the goods in opposition to the verdict. He received the attachment,

therefore, not *colore officii*, but in virtue of his office. His sureties undertook 'that he should faithfully execute' the process. If he had, 'in all things,' performed his duty, he would have seized the goods of Fay, or returned the writ, instead of which he levied upon the goods of Bachellor, as the property of the defendant in the attachment. Upon principle and upon grounds of public policy, it seems to me that the responsibility of his sureties should be different from those they would incur, if the Sheriff had entered upon the premises of the relator, and removed his goods without any process whatever. In the last case supposed, the Sheriff would act in his own right, and might be resisted as any other wrong-doer. In the one before us, he was put in motion by legal authority, invoked in behalf of others, and could command the power of the county to aid him in its execution. Respect for the process of our Courts, and for the official character of our Sheriff, if it did not forbid forcible opposition, (which must have been unavailing,) is incompatible with the notion of making resistance indispensable as a means of protection. This must be the alternative, if those who are thus aggrieved are driven to rely exclusively upon the responsibility of the officer, who, as in this case, may be wholly insolvent."

This case does not stand alone. A large number of authorities may be cited in support of the same principle. In *Ex parte Chester*, (5 Hill, 555,) the same Court that decided the case of *Ex parte Reed*, directed a suit to be brought on the official bond of a Sheriff for a false return. In *Skinner* v. *Phillips*, (4 Mass. 69,) it was determined by the Court, Parsons, C. J. delivering the opinion, " that any party injured by the malfeasance of the Sheriff or his Deputy, is entitled to relief upon the bond." The condition of the bond was, " that he should faithfully execute the duties of his office." In *Archer* v. *Noble*, (3 Greenl. 418,) a Constable had given bond "for the faithful performance of his duties and trust as to all process by him served or executed." An execution having come into his hands, was levied upon property which did not belong to the judgment debtor, and a suit was thereupon brought against him and his sureties, on his official bond. The Court held that the suit was properly brought, and that the wrongful act of the officer was not merely a private

trespass, but a breach of his bond.  The same principle was decided and maintained in Kentucky, in the case of *Forsyth* v. *Ellis*, (4 J. J. Mar. 299,) and in the *Commonwealth* v. *Stockton*, (5 Mon. 182.)  *Harris* v. *Hanson*, (11 Me. 241,) and *Carmack* v. *Commonwealth*, (5 Binney, 184,) are also authorities in point.  In the latter case, Tilghman, C. J. said : "Here was a writ put into the Sheriff's hands, commanding him to levy on the goods of Wilson.  By virtue of this writ he levied on the goods of *other persons*, after receiving notice that they were not the goods of Wilson.  It may be fairly said, that this was not a faithful performace of his office."  (See Crocker on Sheriffs, 342.)

The law is well settled, that a Sheriff is answerable for the wrongful acts of his Deputy, committed under color of his office, and in the pretended discharge of his duty.  If the Deputy levy an execution against A, upon the property of B, the Sheriff is liable ; and he is liable, not only in a private and individual capacity, but in his public and official character, and upon his official bond.  This liability rests alone upon the ground of the official relation existing between the parties, and can be enforced only as to such acts of the Deputy as are connected with the performance of his official duty.  He is no more answerable for a naked trespass committed by the Deputy than any other person, but the wrongful acts of the Deputy, done under color of process, are deemed official, and for such acts he is liable.  (3 Starkie's Ev. 1354; 1 Wash. 90; 7 John. 35; 1 Dougl. 40.)  This being admitted, and its correctness seems never to have been questioned, it is difficult to perceive any satisfactory reason why similar acts of the Sheriff himself should not be held of the same character, in order to charge his sureties.  Our statute makes no distinction between the liability of a Sheriff and a Constable.  The condition of the bond is the same as to both officers, and the liability of the sureties is coextensive with the liability of the officer himself, in respect to all his official acts.  It is clear, that if the trespass complained of had been committed by a Deputy of the Constable, and not by the Constable in person, the act would be deemed so far official as to charge the Constable and his sureties upon his official bond.  We can see no difference in the character of the act, and the consequences resulting from it, because it was committed by the Constable himself.

The weight of authority, and, as we think, a fair construction of the statute, and the condition of the bond, are in favor of the maintenance of the action. The Legislature intended that the officer and his sureties should be responsible for every abuse of his official powers, and we think there could not well be a more flagrant abuse of such powers than the seizing and selling of the property of one person under and by virtue of an execution against another. He does not act in such a case in a private and individual capacity, but as an officer, clothed with official authority, and protected by the judgment of a Court and the process which he pretends to execute. No resistance can lawfully be made by any person whose property is thus taken. The property itself may be detained whether legally taken or not, and a summary mode is provided for the protection of the officer, to determine disputes in regard to the title. To hold that such an act is not official, at least so far as to charge the sureties, it appears to us, would be in contravention of the spirit and intention of the statute, and would certainly operate most unjustly upon persons whose property may be taken by an officer who is insolvent and unable to respond in damages for its value.

The only additional question in the case relates to the amount of the judgment. In this respect an error has been committed. It is not pretended that the officer acted in bad faith, or was influenced in any degree by wanton or malicious motives. Under such circumstances, the plaintiff was entitled to recover the value of the property, and legal interest on such value, and nothing more. The value was not found by the Court, but it is stated in the complaint at four hundred and fifty dollars, and the interest on that sum does not amount to the residue of the judgment. For this error the judgment, in my opinion, should be reversed, but as the case has been here before, it need not be sent back for a new trial on the whole merits. The Court below should be directed to proceed to ascertain the value of the property and the legal interest thereon from the date of the seizure, and should render a judgment in favor of the plaintiff for that amount.

BALDWIN, J. delivered the following opinion—FIELD, J. concurring :

I agree with my brother, Cope, in all of the foregoing opinion, except the conclusion. I think, that as there is no statement which we can regard, we must look solely to the findings of the Court, and that from these it appears that by the evidence and the admissions of the parties, the plaintiff's damages amount to six hundred and fifty dollars. It matters not what the pleadings are—the complaint covering the amount—the defendant was fixed by his admission, or even by evidence to which he did not except, to the damages shown by such admissions or evidence. If the damages were excessive he could only avail himself of the error on motion for a new trial, and this Court could not review it, unless the proofs were before it. There is no statement on new trial or even on appeal, and the finding of the Court on this point is conclusive; therefore I am of the opinion that the judgment should be affirmed.